# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY ASHFORD and<br>BRIAN ANDERSON,<br><br>          **Plaintiffs,**<br>  v.<br><br>WANDA PENNOCK, et al.,<br><br>          **Defendants.** | No.: 19-cv-4215-MMM |

## MERIT REVIEW ORDER

Plaintiffs, proceeding *pro se* and detained in the Rushville Treatment and Detention Center, seek leave to proceed *in forma pauperis*. The "privilege to proceed without posting security for costs and fees is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them." *Brewster v. North Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972). A court must dismiss cases proceeding *in forma pauperis* "at any time" if the action is frivolous, malicious, or fails to state a claim, even if part of the filing fee has been paid. 28 U.S.C. § 1915(d)(2). Accordingly, this Court grants leave to proceed *in forma pauperis* only if the complaint states a federal claim.

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiffs' favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim for relief that is plausible on its face.'" *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).

1

# ANALYSIS

Plaintiffs are civilly detained in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1, *et seq*. The Court notes that in disclosing their prior litigation history, Plaintiffs have failed to disclose their virtually identical prior filing, *Ashford and Anderson, v. Pennock et al*., No. 18-4202 (C.D. Ill. 10/3/18). In that case, the Court had dismissed the complaint at merit review with leave to replead. When Plaintiffs did not file an amended complaint, the matter was dismissed without prejudice. Plaintiffs now file the instant case, reasserting the claims pled in the prior case. Plaintiffs are placed on notice that they must be forthright in all future filings, fully disclosing their prior litigation history. The failure to do so may be sanctionable.

Plaintiffs' complaint is lengthy and confusing and does not clearly state the legal claims under which they proceed. Plaintiffs identify their action as follows:

### NATURE OF THE CASE

> Forcing the habit of obedienceso deeply ingrained over years to the point that it overrides rationalityand become immoral orders and practices. It is the intention of Liberty Healthcare, Inc. and the IllinoisDepartment of Human Services, Rushville Treatment and Detention Facility Directors to just force incapable residents into a room and expect that they will become impromptu therapists or emergency first responders if the person has a medical issue.

Plaintiffs name Defendant Wanda Pennock, Assistant Security Director of the Department of Health and Human Services ("HHS"), which has oversight of the Rushville facility. Plaintiffs also name Psychologist Paula Lodge, Clinical Program Director Shan Jumper, Grievance Examiner Sharlene Caraway, Assistant Grievance Examiner P. Vincent, HHS and Liberty Healthcare.

Plaintiffs assert that all Defendants engaged in "demeaning, intimidating or threatening words, signs or gestures, or other actions by an employee…that results in emotional distress or maladaptive behavior, or could have resulted in emotional distress, or maladaptive behavior, for any individual present." They claim that Defendants assert "malevolent authority" and that those residents who obey the authorities "doe[es] not see himself as responsible for his own actions, but rather as an [sic] specimen executing the wishes of the therapists."

Plaintiffs assert that Defendants were acting pursuant to the Illinois Administrative Code 299.300 which provides that "all double-room assignment shall be screened for appropriate safety, security and treatment considerations;" and Ill. Admin. Code § 299.620 which provides "programming and unit rules are to promote a safe and secure environment for treatment. All residents are expected to comply with the programming unit rules as well as staff orders. Disagreement with the staff order will be discussed only after the resident has complied with the order…." Plaintiffs assert that the cited provisions "creates a lack of order or regular arrangement, thus it is a deprivation of Plaintiff's rights under color of law." It is Plaintiffs' claim that the Administrative Code "forces grown men to do as they are told".

Plaintiff Ashford

Plaintiffs allege that they had been roommates for six and a half years when, on March 27, 2018, Defendant Pennock moved them. Plaintiffs objected, to no avail. On an unidentified date, Plaintiff Ashford was cited for leaving the unit without permission. Plaintiff Ashford claims that he had received permission from Special Therapy Aid ("STA") Keller but, nonetheless, was found guilty by Defendant Jumper. While it is not clearly pled, a Plaintiff will may well be asserting a lack of procedural due process in the citation and guilty finding.

3

At some point, Plaintiff Ashford was apparently moved to cell without electricity as he alleges that, on April 4, 2018, he asked to be moved to a cell which had electricity. On an unidentified date, Plaintiff was cited and found guilty of refusing housing with resident L.P. Moore. On April 16, 2018, Plaintiff Ashford went before the Behavioral Committee for refusing to room with resident D. Welch, who had heart problems. On May 10, 2018, Plaintiff Ashford was to go before the Behavioral Committee for refusing housing with resident D. Rush. Plaintiff alleges that Mr. Rush had cancer and that Defendants were trying to force him to act as a hospice worker. Plaintiff Ashford refused to attend the hearing but was found guilty by Defendant Pennock of interfering with facility operations.

On May 23, 2018, Plaintiff refused housing with resident Ford. Plaintiff submitted an Attempt to Resolve to Defendant Vincent, who advised him that it was the Rooming Committee, with input from the Treatment Team, which made the determination regarding housing assignments. Plaintiff Ashford was, once again, found guilty of the infraction.

On June 1, 2018 Plaintiff Ashford refused to be housed with resident Kramer. On June 5, 2018, Plaintiff was visited by Defendant Pennock who gave him a direct order to move. He refused, and was issued a disciplinary citation. The charge went before the Behavior Committee on June 7, 2018. There, Plaintiff disputed Defendant Pennock's account of their conversation regarding his refusal to room with resident Kramer. Plaintiff does not indicate in what way Defendant Pennock's account was inaccurate nor does he deny that he refused housing with Kramer. After the hearing, Plaintiff was placed on Temporary Secure Management Status ("TMS"), a form of "lock-down".

Plaintiff Ashford indicates that he was back before the Behavioral Committee on August 24, 2018 for refusing housing with resident E. Williams. It is unclear whether he remained on

4

TMS at that time or whether he was, again placed on TMS. Plaintiff Ashford claims that there have been other residents who have refused housing but were not placed on TMS . He does not claim, however, that other residents had refused housing on five or so occasions as had he. Plaintiff does not indicate how long he was on TMS but asserts that, under the terms, his personal electronics were taken, and he must wear a yellow jumpsuit when leaving his room, and handcuffs when leaving the unit.

 Plaintiff Anderson

As indicated, on March 27, 2018, Plaintiff Anderson learned that he and Plaintiff Ashford were being assigned to different cells. Plaintiff Anderson was told that he would be moved to Baker 3 with a resident had previously refused housing with another and would likely do so again. When Plaintiff Anderson asked to remain with Plaintiff Ashford, Defendant Pennock told him to submit a rooming request.

On April 10, 2018, Plaintiff Anderson received a new cellmate, Dooley. On April 18, 2018, Dooley allegedly asked to see Plaintiff's penis and Plaintiff refused. On April 21, 2018 and May 2, 2018, and May 23, 2018, June 22, 2018 Dooley solicited sex with Plaintiff Anderson, which Plaintiff refused. Plaintiff complained about his roommate to unidentified staff from May 13, 2018 in July 30, 2018. On June 23, 2018, he told his therapist, not a party, who contacted Defendant Pennock. Defendant Pennock met with plaintiff and told him to submit a new roommate request. On June 31, 2018, both Anderson and Dooley were moved to a different unit but, once again, shared a cell. Plaintiff Anderson pled that he was in fear for his physical safety and was uncomfortable being in the same room with Dooley.

On August 21, 2018, Plaintiff was moved to a different unit with a different cellmate, Hayes, who was in a wheelchair. In September 2011, Plaintiff was moved to a cell with R. P.

5

Smith who had allegedly threatened to harm another resident who was to be housed with him. Plaintiff Anderson does not, however, allege that R.P. Smith made any threats toward him.

Plaintiffs request a variety of identical relief. This includes that each be released from the custody of HHS; that all Defendants be required to adhere to the Illinois Mental Health Code; that the Rooming Committee and Behavior Committee be chaired by a psychiatrist, nurse, and doctor; and that all rooming requests be screened based on safety, security, and treatment considerations. Plaintiffs ask that Defendants be sanctioned and that be awarded compensatory and punitive damages.

While Plaintiff's name both HHS and Liberty Healthcare in the caption, they have not specifically addressed any allegations against these Defendants. HHS is, of course, immune from suit as it is a department of the State of Illinois and enjoys the State's sovereign immunity. *See Hargett v. Baker*, No. 02-1456, 2002 WL 1732911, at *2 (N.D. Ill. July 26, 2002) (dismissing § 1983 claim against the Illinois Department of Human Services due to the "well-established principle that states and state agencies enjoy immunity from suit in federal courts under the Eleventh Amendment.") While Liberty Healthcare is otherwise amenable to suit under § 1983, Plaintiffs have not pled any allegations against it and merely naming a defendant in the caption is insufficient to state a claim. *Jones v. Butler,* No. 14-00846, 2014 WL 3734482 *2 (S.D. Ill. July 29, 2014) citing *Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir.1998).

## ANALYSIS

To the extent that the complaint is read as, once again, asserting that Plaintiffs have a right to the cellmate of their choosing, it is once dismissed for failure to state a claim, this time with prejudice. *See Smego v. Weitl*, No. 13-3068, 2016 WL 10934368, at *7 (C.D. Ill. Dec. 6, 2016), *aff'd sub nom. Smego v. Jumper*, 707 Fed. Appx. 411 (7th Cir. 2017) (civil detainee does

not have a right to "a roommate of his own choosing.") Plaintiff's allegations that the Illinois Administrative Code as applied, "forces grown men to do as they are told," fails to state a cognizable constitutional claim and is dismissed.

Plaintiff Ashford may be found to have stated a procedural due process claim as to the claim that he was wrongly cited and found guilty of leaving the unit without permission. He might also be found to have stated a claim of inhumane conditions of confinement for being kept in a cell without electricity. The two claims, however, are unrelated and represent an impermissible mis-joinder. *Ghashiyah v. Frank*, 05-C-0766, 2008 WL 680203, at *2 (E.D. Wis. Mar. 10, 2008) ("defendants are properly joined in a single action only if they are parties to a single transaction or occurrence common to all defendants, and the claims against them involve a common question of fact or law.") Plaintiff Ashford was advised of this in the prior case but reasserts the mis-joined claims here. Plaintiff Ashford will have thirty days in which to file an amended complaint, indicating whether he wishes to proceed under a due process or conditions of confinement claim.

Plaintiff Anderson may be found to have stated a claim of failure to protect as to Defendant Pennock. Plaintiff claims that he personally spoke with Defendant around June 23, 2018, complaining of the sexual advances by Dooley. Plaintiff was not moved, however, until August 21, 2018. Plaintiff Anderson pled that in the meantime, he feared for his physical safety and was uncomfortable with Dooley. An officer may be liable for a failure to protect "if the officer knew the inmate faced a 'substantial risk of serious harm' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). This applies even if no harm befalls the plaintiff. "Even without an actual injury, the mere probability of the harm to which [Defendant] exposed [Plaintiff] can be sufficient to create

7

liability: The 'heightened risk of future injury' a prison official intentionally or with reckless indifference inflicts on an inmate 'is itself actionable.'" (Internal citations omitted). *Wright v. Miller*, 561 Fed. Appx. 551, 555 (7th Cir. 2014). This claim will proceed.

The Court notes that Plaintiffs Ashford and Anderson have filed this action in both their names, as co-Plaintiffs. The Federal Rules of Civil Procedure allow joinder of Plaintiffs if they assert a claim arising out of the same transaction or occurrence, and if there is a common question of law or fact common to all plaintiffs. Fed. R. Civ. P. 20(a)(1)(A), (B). Here, Plaintiff Ashford will be proceeding, at his election, on either a due process or conditions of confinement claim. On the other hand, Plaintiff Anderson will be proceeding on an unrelated failure to protect. The Plaintiffs' claims do not arise from the same transaction or occurrence and do not involve common questions of law or fact. As a result, the Court hereby severs the two claims and orders the clerk to open a separate case for Defendant Ashford, for review by this Court.

**IT IS THEREFORE ORDERED:**

1) Plaintiff Anderson's petition to proceed in forma pauperis [4] is GRANTED as he will proceed on a failure to protect claim against Defendant Pennock only. All other claims will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. The remaining Defendants are DISMISSED.

2) Plaintiff Ashford's complaint is DISMISSED for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A, due to misjoinder. Plaintiff Ashford will have 30 days in which to file an amended complaint consistent with the instruction given in this order. The Clerk is to sever Plaintiff Ashford's case from that of Plaintiff Anderson and to open a separate case for Plaintiff Ashford. If Plaintiff fails to file an amended complaint within the

8

time allowed, his complaint will be dismissed without prejudice for failure to state a claim. Plaintiff's pleading is to be captioned Amended Complaint and is to include all of his claims without reference to a prior pleading. Plaintiff Ashford's Petition to Proceed IFP [5] is dismissed here and will be refiled in the newly opened case.

    3) The Clerk is directed to send to Defendant Pennock pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

    4) If Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

    5) Defendant shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

    6) Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed.

9

Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7) Once counsel has appeared for Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8) Counsel for Defendant is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

9) Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT

DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED: __4/14/2020_____

                                          _____s/Michael M. Mihm_____
                                                  MICHAEL M. MIHM
                                        UNITED STATES DISTRICT JUDGE